UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LEO KENNEDY,

        Petitioner,

v.                            CASE NO. 04-CV-71116-DT
                            HONORABLE NANCY G. EDMUNDS

MILLICENT WARREN,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DENYING A CERTIFICATE OF APPEALABILITY AND
LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

Michigan prisoner Leo Kennedy ("Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of first-degree murder and possession of a firearm during the commission of a felony following a jury trial in the Wayne County Circuit Court in 2001 and was sentenced to a mandatory term of life imprisonment without the possibility of parole and a consecutive term of two years imprisonment. In his pleadings, Petitioner raises claims concerning the effectiveness of trial counsel, prosecutorial misconduct, the admission of prior bad acts testimony, and the right of confrontation. For the reasons stated, the Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

1

## II.      Facts and Procedural History

Petitioner's convictions arise from the shooting death of reputed crack cocaine dealer Anthony "Tone" Mercer outside the Club Escape nightclub in Detroit, Michigan during the early morning hours on August 29, 1999.  Petitioner was tried with co-defendant Darnell Parham by separate jury during a joint trial in January, 2001.  The prosecution's theory was that Petitioner shot Mercer at Parham's request because Mercer was a rival drug dealer.  The defense theory was that Petitioner was merely present when Parham shot Mercer and that witnesses were lying about his involvement in the crime.

At trial, two witnesses testified that they saw Petitioner shoot Mercer.  Ronald Powell, who was 15 years old at the time of the incident, testified that he recognized Parham's car near the nightclub at three or four in the morning on August 29, 1999.  He saw Parham arguing with Mercer near the car and heard Parham say, "Nigger, I'll kill you."  Parham and Petitioner then walked closer to the nightclub door and Parham handed Petitioner a gun.  Petitioner fired four shots at Mercer before fleeing the scene with Parham.  During cross-examination, Parham acknowledged inconsistencies between his trial testimony, preliminary examination testimony, and police statements as to his descriptions of the shooter and certain details of the shooting.

Dawon Grier testified that he was at the nightclub when Mercer was killed.  Grier identified Petitioner as the shooter and testified that Petitioner fired about five shots at Mercer.  Grier also stated that he had heard in the neighborhood that Parham gave Petitioner a mission to shoot Mercer.  Grier acknowledged that, at the preliminary examination, he testified that he heard gunshots and saw Petitioner running away, but did not say that he saw Petitioner shoot Mercer, because he was scared.  Grier explained that he and his family had relocated for their

2

own safety.

Other witnesses also testified at trial implicating Petitioner in the crime, but were reluctant to do so.  Michael Dixon testified that he could not remember anything about the case and admitted telling the prosecutor that he was afraid to testify.  Dixon acknowledged that he had previously signed a police statement.  In that statement, Dixon said that he had known Petitioner since childhood, that he ran into Petitioner after the shooting, and that Petitioner told him that he had killed Mercer.  Dixon also said that Parham asked him to lie and say that he, Dixon, was at the nightclub on the night of the shooting, but Parham was not there.  In his statement, Dixon also said that Parham told him that he had "told on" Petitioner and reported that Petitioner had come to his house and admitted shooting Mercer.  Dixon claimed that his police statements about Parham were true, but his statements about Petitioner were not true.  On cross-examination, Dixon was also impeached with his preliminary examination testimony in which he denied knowing Petitioner.  Dixon ultimately admitted that he knew both Petitioner and Parham, but was afraid to testify.

Sennie Yeager, Parham's former girlfriend, was a very reluctant and combative witness. She denied making statements to police, in which she claimed that she was in Parham's car when the shooting occurred and that Parham had raped and threatened her following the incident.  She also refused to answer questions, argued with counsel and the court, and was held in contempt. After being admonished by the court, she testified that Petitioner told her that he had shot Mercer and that Parham told her that Petitioner was the one who pulled the trigger.

Tederrian Jones, Parham's cousin, testified that he knew Petitioner and Mercer.  He further explained that he had sold drugs for Mercer, but had a dispute with him.  Jones testified

3

that he and his cousin, Deandre Frazier, have "Forever Real" tattoos on their necks and admitted that Petitioner may have the same tattoo.  Jones also testified he has a cousin named Eugene Wilkins ("Gino") who lives on Crane Street.  Jones denied knowing about Petitioner's involvement in the drug trade, denied knowing about Petitioner gun, and denied making a statement to police.  When confronted with his police statement, he admitted signing it but claimed that he only did so because he was afraid and wanted to go home.  Jones was impeached with his police statement in which he said that he heard that Petitioner shot Mercer and hid the gun at a house on Grace Street.  In his statement, Jones admitted that he took the gun from the house on Grace Street and gave it to his cousin Eugene Wilkins who lived on Crane Street.

Deandre Frazier, Jones' and Parham's cousin, testified that he knew Petitioner and Mercer.  He explained that he and his cousins used to sell drugs for Mercer, but they had begun to do so on their own.  Frazier denied having problems with Mercer.  He also denied making statements to police.  Frazier was impeached with his signed statement which indicated that there was an ongoing dispute between his group and Mercer, that Mercer had previously shot at Parham's house, that Petitioner had admitted shooting Mercer to end the dispute, and that the gun was hidden at the house on Grace Street after the shooting.  Frazier claimed that he did not provide the statement and only signed the documents so that he could go home.

The preliminary examination testimony of Derrick McCoy, an unavailable witness, was also read into the record at trial.  McCoy testified that he overheard a conversation between Petitioner, Jones, and Frazier at the house in Grace Street after the shooting.  According to McCoy, Petitioner commented on how Mercer looked when he was shot and how fast he crawled into the nightclub and then said that he should have given Mercer a head shot.  McCoy also

4

testified that Petitioner was known to carry a black nine millimeter handgun.

The forensic report revealed that Anthony Mercer, a 26-year-old black male, died from four gunshot wounds, two in his right arm and two in his abdomen. The bullets were removed from the body and given to police. Police testimony revealed that the murder weapon, a black nine millimeter handgun, was found at the Crane Street residence, as indicated in Tederrian Jones' statement. Police testimony also established that Petitioner was arrested following a traffic stop during which he gave two false names, punched the officer, and fled. Police officers subsequently found Petitioner hiding under a porch and arrested him after a struggle.

Following his arrest and after being advised of his constitutional rights, Petitioner gave police a signed statement, which he indicated was voluntary. Petitioner admitted riding with Darnell Parham to Club Escape on the night of the shooting, but said that he only went with Parham to get drugs from him to sell in order to earn money. He told the police that Parham and Mercer were feuding over drugs and that Parham shot Mercer outside of the nightclub. Petitioner denied shooting Mercer. Petitioner did not testify at trial. His defense was that Parham shot Mercer and had the real motive to do so. He argued that the witnesses who implicated him in the crime were drug dealers who were not worthy of belief and claimed that he was being blamed for the crime because he was the low man in the drug business.

At the close of trial, the jury found Petitioner guilty of first-degree murder and felony firearm. The trial court subsequently sentenced him to life imprisonment without the possibility of parole on the murder conviction and a consecutive term of two years imprisonment on the felony firearm conviction.

Following sentencing, Petitioner filed a delayed application for leave to appeal with the

5

Michigan Court of Appeals asserting that trial counsel was ineffective for failing to sufficiently confer with him, for not objecting to certain evidence, for failing to seek suppression of Petitioner's police statement, for failing to object to improper testimony, for making an improper closing argument, and for failing to object to the prosecutor's use of impeachment testimony as substantive evidence of guilt. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Kennedy*, No. 239127 (Mich. Ct. App. April 5, 2002) (unpublished). The court also denied rehearing. Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court raising the same claims, which was denied in a standard order. *People v. Kennedy*, 468 Mich. 872, 659 N.W.2d 231 (2003).

On March 25, 2004, Petitioner filed an initial habeas petition with this Court raising ineffective assistance of counsel claims, as well as claims concerning prosecutorial misconduct, the admission of prior bad acts testimony, and the denial of his right of confrontation. Respondent filed an answer to the petition asserting that it should be dismissed because Petitioner had not properly exhausted his state court remedies as to all of his claims. On December 14, 2004, the Court dismissed the unexhausted claims without prejudice, stayed the exhausted claims, and administratively closed the case to allow Petitioner to return to the state courts. The Court provided that Petitioner could return to federal court on a perfected and amended petition following the prompt exhaustion of his state court remedies.

Petitioner subsequently filed a motion for relief from judgment with the state trial court asserting that trial counsel was ineffective for failing to object to inadmissible hearsay, that the prosecutor engaged in misconduct, that the trial court erred in admitting prior bad acts, and that the trial court violated his confrontation rights by admitting his co-defendant's out-of-court

6

statements. The trial court conducted a hearing and denied the motion. *People v. Kennedy*, No. 00-10568 (Wayne Co. Cir. Ct. July 29, 2005). Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Kennedy*, No. 271235 (Mich. Ct. App. Dec. 27, 2006) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Kennedy*, 478 Mich. 926, 732 N.W.2d 909 (2007).

Petitioner thereafter returned to this Court with an amended habeas petition, raising the following claims as grounds for relief:

> I.     He was denied the effective assistance of counsel because counsel failed to object to inadmissible hearsay, failed to suppress his police statement, and made an improper closing argument.
>
> II.    The prosecutor denied him a fair trial when she interjected issues broader that his guilt or innocence during closing argument.
>
> III.   It was error to admit prior bad acts evidence against him.
>
> IV.    The admission of witness Dixon's testimony regarding co-defendant Parham's statement implicating him in the homicide violated his Sixth Amendment right to confrontation.

Respondent has filed an answer to the petition asserting that it should be denied because the claims are barred by procedural default and/or lack merit.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody

7

> pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether

8

the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.   Analysis**

A.   Ineffective Assistance of Counsel Claims

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to inadmissible hearsay, for failing to seek suppression of Petitioner's statement, and for making an improper closing argument. Respondent contends that these claims lack merit and do not warrant habeas relief.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective

9

assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Petitioner raised these ineffective assistance of counsel claims in seeking leave to appeal on direct appeal of his convictions.  The Michigan Court of Appeals denied leave to appeal "for

10

lack of merit in the grounds presented" and the Michigan Supreme Court denied leave to appeal because it was "not persuaded that the questions presented should be reviewed."  Because the state appellate courts did not specifically address whether the alleged errors constituted a denial of Petitioner's federal constitutional rights, the deference due under 28 U.S.C. § 2254(d) does not apply, and habeas review of the claims is *de novo*.  *See Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

1.   Failure to Object to Hearsay

Petitioner asserts that trial counsel was ineffective for failing to object to inadmissible hearsay by Dawon Grier, Michael Dixon, and Tederrian Jones.  Petitioner claims that counsel should have objected to Grier's testimony that he heard in the neighborhood that Parham gave Petitioner a mission to shoot Mercer, to the use of the witnesses' police statements under the guise of impeachment, and to Dixon's statement to police that co-defendant Parham told him that Petitioner came to his house and admitted shooting Mercer.  This Court disagrees.

As an initial matter, the Court finds that counsel may have reasonably decided not to object to such matters because exposing inconsistencies in the witnesses' testimony (between their own police statements, preliminary examination testimony, and trial testimony as well as among the different witnesses) and emphasizing co-defendant Parham's motive to commit the shooting was part of his overall trial strategy of claiming that the witnesses were not credible, that Parham shot Mercer, and that Parham was attempting to blame the shooting on Petitioner. The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective

11

assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Petitioner first asserts that counsel was ineffective for failing to object to Dawon Grier's testimony that he heard in the neighborhood that Parham had given Petitioner a mission to kill Mercer. Petitioner claims that such testimony was hearsay and violated his confrontation rights. Again, however, counsel may have reasonably decided not to object to this testimony because it was elicited by co-defendant's counsel who then got Grier to admit that he was not privy to a plan between Petitioner and co-defendant Parham to murder Mercer. *See* Trial Tr., Vol. II, pp. 84-85. Petitioner was also able to use such testimony to argue that Grier did not actually see the shooting and only assumed that Petitioner shot Mercer based upon what he heard in the neighborhood and/or the fact that he saw Petitioner running from the scene. Thus, while such testimony may have been hearsay under state law, counsel was not necessarily deficient for failing to object to it. Additionally, contrary to Petitioner's argument, such testimony did not violate his confrontation rights as it was non-testimonial. *See* Claim IV discussion *infra*.

Nonetheless, even assuming that counsel erred in failing to object to this testimony on hearsay grounds, Petitioner cannot establish that he was prejudiced by counsel's conduct. The prosecution presented significant evidence that Petitioner committed the crime. Both Ronald Powell and Dawon Grier testified that they saw Petitioner shoot Mercer. Witnesses, including Sennie Yeager and Derrick McCoy, testified that Petitioner told them that he had shot Mercer. Petitioner also admitted to police that he was with Parham at the time of the shooting. Testimony regarding Petitioner's flight from the police (following a traffic stop) and the recovery of the murder weapon also implicated Petitioner in the crime. Given such evidence of

12

Petitioner's guilt, there is no reasonable probability that, but for counsel's alleged error, the result of the trial would have been different. Petitioner has thus failed to establish that trial counsel was ineffective under *Strickland*.

Petitioner also asserts that trial counsel was ineffective for failing to object to the prosecution's use of Dawon Grier's and Tederrian Jones' police statements for impeachment. Counsel, however, may have reasonably determined that such an objection would have been futile. Under Michigan law, evidence of a witness' prior inconsistent statement may be admitted to impeach the witness even though the statement tends directly to inculpate the defendant. *See* Mich. R. Evid. 613; *Cathron v. Jones*, 190 F. Supp. 2d 990, 999 (E.D. Mich. 2002) (citing *People v. Kilbourn*, 454 Mich. 677, 682, 563 N.W.2d 669 (1997)). While impeachment may be disallowed when the substance of the statement used to impeach the credibility of the witness is relevant to the central issue of the case and there is no other testimony from the witness for which his credibility is relevant, *Kilbourn*, 454 Mich. at 683, both Grier and Jones provided testimony implicating Petitioner in the crime. The prosecution's use of their police statements was thus proper under Michigan law. Moreover, such use did not violate the Confrontation Clause because the police statements were admitted for impeachment purposes and not to prove the truth of the matters asserted. *See Tennessee v. Street*, 471 U.S. 409, 414 (1985); *see also Crawford v. Washington*, 541 U.S. 36, 59 n. 9 (2004). Defense counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen*, 99 F.3d at 1328.

Petitioner relatedly asserts that counsel was ineffective for failing to object to the prosecution's use of Michael Dixon's police statement for impeachment. In particular, counsel

13

objects to Dixon's statement that co-defendant Parham told him that Petitioner had come to Parham's house and admitted killing Mercer.  Petitioner claims that Dixon's statement was inadmissible hearsay and violated his confrontation rights.[1]  The use of Dixon's police statement, even for impeachment, may have been improper under Michigan law because Dixon did not provide direct testimony against Petitioner.  *See Kilbourn*, 454 Mich. at 683.  Counsel did not raise such an objection at trial.  Nonetheless, even if counsel erred in failing to object to the use of Dixon's police statement (on either hearsay or constitutional grounds), Petitioner has not shown that he was prejudiced by counsel's conduct.  The trial court only allowed the police statements to be used for impeachment purposes and instructed the jury about the proper consideration of the statements.  Jurors are presumed to follow the court's instructions.  *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors...take an oath to follow the law as charged, and they are expected to follow it.").  The prosecution did not rely upon Dixon's statement as substantive evidence of guilt.  Moreover, as previously discussed, the prosecution presented significant evidence that Petitioner committed the crime.  There is no reasonable probability that, but for counsel's alleged error, the result of the trial would have been different.  Petitioner has failed to establish that trial counsel was ineffective under *Strickland*.

### 2.   Failure to Seek Suppression of Petitioner's Statement

Petitioner next asserts that trial counsel was ineffective for failing to seek suppression of his own police statement.  Trial counsel, however, may have reasonably determined that the admission of the statement was beneficial to the defense.  Although Petitioner admitted being at

---

[1]The Court focuses on Petitioner's hearsay argument in this section and addresses his confrontation argument in the section resolving Claim IV.

14

Club Escape with co-defendant Parham on the night of the shooting, he denied killing Mercer, explained that he went riding with Parham to obtain drugs to sell to earn money for his family, and said that Parham shot Mercer due to an ongoing drug trade dispute.

Additionally, counsel may have reasonably determined that the statement was admissible such that any objection would be futile. The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession using coercive activity; (2) the coercion was sufficient to overbear the suspect's will; and (3) the suspect's will was in fact overcome by the coercive police activity. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include:

1. Police Coercion (a "crucial element")
2. Length of Interrogation
3. Location of Interrogation
4. Continuity of Interrogation
5. Suspect's Maturity
6. Suspect's Education
7. Suspect's Physical Condition & Mental Health
8. Whether Suspect Was Advised of Miranda Rights

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). Without coercive police activity, however, a confession should not be deemed involuntary. *Connelly,* 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a

15

confession is not 'voluntary' within the meaning of the Due Process Clause"). The petitioner

bears the burden of proving that a confession was involuntary. *See Boles v. Foltz*, 816 F.2d

1132, 1136 (6th Cir. 1987).

In this case, the investigating officer testified that Petitioner was advised of his *Miranda*

rights and signed a constitutional rights form before making his statement. The record indicates

that Petitioner spoke to the officer voluntarily, made changes to his statement, and signed the

written statement. There is no evidence to suggest that Petitioner's statement was coerced or

made in violation of the right to counsel. Petitioner has not shown that his statement should

have been suppressed. As noted, counsel cannot be deemed deficient for failing to make a futile

objection or motion. *See McQueen*, 99 F.3d at 1328. Petitioner has failed to demonstrate that

trial counsel's performance was deficient or prejudicial in this regard.

3.    Improper Closing Argument

Lastly, Petitioner asserts that trial counsel was ineffective for making an improper

closing argument. Petitioner objects to the following remarks:

> You know the irony of this whole thing? Maybe I shouldn't say this, but I guess
> I feel I have to. It's just festering with me. Here's a guy who shoots up the
> neighborhood, who sells drugs, and we're in here worrying about who did him.
> That bothers me. I know we have a legal obligation to do this. I know that. I
> understand that. I do. And I respect this institution for what it is, but what I'm
> saying to you is look what we brought I to establish what somebody did do to
> him. We brought in his, as MTV Raps would say, his posse. We brought in
> more drug dealers to establish who killed the drug dealer. You know, and
> sometimes when you hang with flies, what happens to you? It gets on you. And
> that's what happened in this case.

Trial Tr., vol. IV, pp. 36-37. Petitioner has not shown that defense counsel was deficient in this

respect. First, the remarks were made as part of counsel's vigorous challenge to the credibility

of the prosecution's witnesses. Second, the perceived attack on the victim was only a small part

16

of counsel's closing statement.  The majority of his argument reflected the defense theory that

co-defendant Parham shot Mercer due to their ongoing drug feud and that Petitioner was merely

present when the shooting occurred.  Third, counsel properly argued that the trial testimony

created a reasonable doubt about who shot Mercer.  Petitioner has also not shown that he was

prejudiced by counsel's conduct during closing arguments.  As previously discussed, the

prosecution presented significant evidence of Petitioner's guilt.  Petitioner has failed to

establish that counsel was ineffective under the standard set forth in *Strickland*.  He is therefore

not entitled to habeas relief on such a basis.

        B.      <u>Procedural Default of Remaining Claims</u>

        Respondent contends that Petitioner's remaining claims are barred by procedural default

because Petitioner failed to raise those claims on direct appeal of his convictions and first

presented them to the state courts on collateral review, and the Michigan Supreme Court relied

upon a procedural rule to deny him relief on those claims.

        Federal habeas relief may be precluded on claims that a petitioner has not presented to

the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433

U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails

to comply with a state procedural rule, the rule is actually relied upon by the state courts, and

the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th

Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).  "A procedural

default does not bar consideration of a federal claim on either direct or habeas review unless the

last state court rendering a judgment in the case 'clearly and expressly' states that its judgment

rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263 (1989).  The last *explained*

17

state court judgment should be used to make this determination.  *See Ylst v. Nunnemaker*, 501

U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is

presumed that the last reviewing court relied upon the last reasoned opinion.  *Id*.

Petitioner first presented his prosecutorial misconduct, other bad acts evidence, and

confrontation claims to the state courts in his motion for relief from judgment.  The Michigan

Court of Appeals and the Michigan Supreme Court denied Petitioner relief pursuant to

Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a

defendant if the motion for relief from judgment alleges grounds for relief which could have

been raised on direct appeal, absent a showing of good cause for the failure to raise such

grounds previously and actual prejudice resulting therefrom.  *See* Mich. Ct. R. 6.508(D)(3).

The Michigan Supreme Court's decision, while brief, was based upon an independent and

adequate state procedural rule.  *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000)

(Michigan Supreme Court's citation to MCR 6.508(D) to deny relief constitutes a reasoned

decision invoking a procedural bar); *see also Alexander v. Smith*, No. 06-1569, 2009 WL

426261, *6 (6th Cir. Feb. 20, 2009) (unpublished opinion confirming that *Simpson* is binding

precedent); *cf. Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), *cert. den.* _ U.S. _, 128

S. Ct. 1897 (2008) (ruling that it may be appropriate to look to the state trial court's decision

denying a motion for relief from judgment to determine whether the appellate courts relied upon

a procedural default in denying relief pursuant to MCR 6.508(D)); *Abela v. Martin*, 380 F.3d

915, 921-23 (6th Cir. 2004) (distinguishing case where Michigan Court of Appeals denied relief

for lack of merit in the grounds presented).  In this case, the Michigan Supreme Court (and the

Michigan Court of Appeals) relied upon a clear state procedural default in denying Petitioner

18

relief on his claims.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner neither alleges nor establishes cause to excuse his failure to properly raise these claims on direct appeal of his convictions. For example, he does not allege that appellate counsel was ineffective. This Court need not address the issue of prejudice when a habeas petitioner fails to establish cause to excuse a procedural default. *See, e.g., Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983); *Bell v. Smith*, 114 F. Supp. 2d 633, 638 (E.D. Mich. 2000). Nonetheless, the Court notes that Petitioner cannot establish prejudice as the defaulted claims lack merit. *See* discussion *infra.*

Petitioner has also not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. His prosecutorial misconduct, other bad acts

19

evidence, and confrontation claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

C.      Merits of Defaulted Claims

1.      Prosecutorial Misconduct Claim

Petitioner asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by injecting issues broader than guilt or innocence at trial.  Specifically, Petitioner contends that the prosecutor improperly made two religious references during closing arguments by stating:

> The Bible says the wicked flee when no man pursue it.
>
> ***
>
> I can't believe it.  You know what, let's just be real.  You got a dope murder, who you think gonna come in and testify about it, Pope John Paul?  Do you think they up there cuttin' up their dope at the archdiocese of the Catholic Church? You think the preachers are gonna come in and tell you about the drug activity and who knows who, who works for who?  No.  The only people who know about the drug culture are people in the drug culture.

Trial Tr., vol. IV, p. 25, 40.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the

20

court must determine whether the challenged statements were indeed improper.  *Id*. at 452.

Upon a finding of impropriety, the court must decide whether the statements were flagrant.  *Id.*

Flagrancy is determined by an examination of four factors:  1) whether the statements tended to

mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a

series of improper statements; 3) whether the statements were deliberately or accidentally

before the jury; and 4) the total strength of the evidence against the accused.  *Id.*; *see also Boyle*

*v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546,

549-50 (6th Cir. 1999)).  "[T]o constitute the denial of a fair trial, prosecutorial misconduct

must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or

'so gross as probably to prejudice the defendant.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th

Cir. 1997) (citations omitted).

     Petitioner claims that the foregoing comments by the prosecutor were improper religious

references which may have prejudiced the jury.  It is well-settled that a prosecutor may not

make remarks "calculated to incite the passions and prejudices of the jurors."  *United States v.*

*Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991).  A prosecutor improperly invokes the passions

and prejudices of the jury when he or she "calls on the jury's emotions and fears – rather than

the evidence – to decide the case."  *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008).

Additionally,  "[c]ourts universally condemn" the injection of religion into legal proceedings.

*See Hicks v. Collins*, 384 F.3d 204, 223 (6th Cir. 2004).  The prosecutor's remarks, however,

were not an attempt to improperly appeal to the jurors' religious beliefs.  The first reference

prefaced the prosecutor's argument on the evidence of flight.  The second reference was made

to comment on the credibility of witnesses and was made in response to defense arguments.

21

Neither argument was inherently improper.  The prosecutor did not argue that the jury should

consider religious beliefs or base its decision upon religion or any other impermissible factor.

Moreover, even if the prosecutor's references were improper, they were not so flagrant

as to deprive Petitioner of a fair trial.  *See United States v. Roach*, 502 F.3d 425, 436 (6th Cir.

2007) (finding that prosecutor's reference to Ten Commandments during closing arguments did

not warrant reversal on direct appeal); *Williams v. McKee*, No. 04-73326, 2007 WL 2324953,

*6 (E.D. Mich. Aug. 14, 2007) (denying habeas relief on prosecutorial misconduct claim

involving same biblical passage on flight); *Hobbs v. Lafler*, No. 05-CV-73907-DT, 2007 WL

1098540, *5-6 (E.D. Mich. April 12, 2007) (denying habeas relief on prosecutorial misconduct

claim involving prosecutor's reference to "casting lots").  The prosecutor's remarks, while

deliberate, were isolated, were not misleading or prejudicial, and were not an overt appeal to

religious convictions.  Moreover, there was significant evidence of Petitioner's guilt presented

at trial.  Habeas relief is therefore not warranted on this claim.

### 2. Prior Bad Acts Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in

admitting other bad acts evidence.  Specifically, Petitioner challenges the admission of the

police testimony chronicling his efforts to evade capture and arrest.  Alleged trial court errors in

the application of state evidentiary law are generally not cognizable as grounds for federal

habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of

Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Only when an evidentiary ruling is "so

egregious that it results in a denial of fundamental fairness," may it violate due process and

warrant habeas relief.  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Clemmons*

22

*v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

As to the admission of prior acts, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[2] Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner has thus failed to state a claim upon which habeas relief may be granted as to this issue.

Furthermore, even if Petitioner states a cognizable claim, he is not entitled to relief. Petitioner has not shown that the admission of the disputed evidence rendered his trial fundamentally unfair. The police testimony involved Petitioner's efforts to evade arrest. The evidence of flight was relevant and admissible under Michigan law. *See People v. Goodin*, 257 Mich. App. 425, 432, 668 N.W.2d 392 (2003); *People v. Coleman*, 210 Mich. App. 1, 4, 532 N.W.2d 885 (1995). Although the United States Supreme Court has expressed skepticism as to the probative value of evidence of flight, *see Wong Sun v. United States*, 371 U.S. 471, 483 n. 10 (1963), it has recognized that such evidence may be relevant to show consciousness of guilt. *See United States v. Scheffer*, 523 U.S. 303, 331 (1998) (dissenting opinion of Stevens, J.). The United States Court of Appeals for the Sixth Circuit has held that evidence of flight is

---

[2]While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

admissible to show consciousness of guilt. *See, e.g., United States v. Wimbley*, 553 F.3d 455, 462 (6th Cir. 2009) (citing *United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995)). The admission of flight evidence is not fundamentally unfair. *See, e.g., Wright v. Jamrog*, No. 04-CV-71585-DT, 2005 WL 3262544, *7 (E.D. Mich. 2005) (admission of flight evidence was proper under Michigan law and did not justify habeas relief); *Dorchy v. Jones*, 320 F. Supp. 2d 564, 580 (E.D. Mich. 2004), *aff'd* 398 F.3d 783 (6th Cir. 2005). Because such testimony was properly admitted under state law and the prosecution did not make an improper character or propensity argument based on the evidence, Petitioner has failed to establish a violation of his constitutional rights. Habeas relief is not warranted on this claim.

### 3. Confrontation Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in admitting witness Michael Dixon's police statement that co-defendant Parham told him that Petitioner came to his house and admitted killing Mercer. The Confrontation Clause provides criminal defendants the right to confront and cross-examine witnesses against them. *See, e.g., Davis v. Alaska*, 415 U.S. 308, 315 (1973). The constitutional right to confront adverse witnesses generally prevents a court from admitting an out-of-court statement against a criminal defendant. *See California v. Green*, 399 U.S. 149, 155-58 (1970); *see also Bruton v. United States*, 391 U.S. 123, 126 (1968) (holding that the admission at a joint trial of a co-defendant's confession to police which implicates the defendant violates the Confrontation Clause). The Sixth Amendment protections, however, are not so broad as to exclude the admission of all hearsay statements against a criminal defendant despite his or her inability to confront the declarant at trial. *See Maryland v. Craig*, 497 U.S. 836, 847-48 (1990). The constitutionality of

24

admitting a hearsay statement depends on whether the statement is testimonial or non-testimonial in nature and on the circumstances surrounding the making of the statement.

In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the United States Supreme Court held that the *testimonial* statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations. *Crawford*, 541 U.S. at 54. Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Id*. at 51-52, 56; *United States v. Martinez*, 430 F.3d 317, 328-29 (6th Cir. 2005); *see also United States v. Stover*, 474 F.3d 904, 912-13 (6th Cir. 2007). Co-defendant Parham's statements to acquaintance Michael Dixon were non-testimonial in nature. *Crawford* is thus inapplicable. Similarly, *Bruton* does not apply as Parham's remarks were made to an acquaintance, not the police or prosecuting authorities in a custodial setting. *See United States v. Pugh*, 273 Fed. Appx. 449, 453-54 (6th Cir. 2008) (citing *Davis v. Washington*, 547 U.S. 813 (2006), and *Crawford* in ruling that the co-defendant's statement "we hit a lick" made to the defendant's girlfriend was nontestimonial such that its admission did not "implicate the Confrontation Clause under *Bruton* or otherwise").

Furthermore, the Supreme Court has made clear that the Confrontation Clause is not implicated, and need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U.S. 813, 823-24 (2006); *see also Whorton v. Bockting*, 549 U.S. 406, 420 (2007) (noting that the Confrontation Clause "has no application to such statements and

25

therefore permits their admission even if they lack indicia of reliability"); *Doan v. Carter*, 548 U.S. 449, 458 (6th Cir. 2008); *United States v. Arnold*, 486 F.3d 177, 192-93 (6th Cir. 2007) (en banc). Petitioner has thus not shown that the use of the challenged statement violated his confrontation rights or otherwise rendered his trial fundamentally unfair.

Moreover, even if the use of Dixon's police statement referencing Parham's remarks violated Petitioner's constitutional rights, he is not entitled to relief from this Court. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict). Confrontation and *Bruton* errors are subject to harmless error analysis. *See Delaware v. VanArsdall*, 475 U .S. 673, 684 (1986); *Schneble v. Florida*, 405 U.S. 427, 430 (1972). Given the significant evidence of guilt presented at trial, particularly the testimony of Ronald Powell and Dawon Grier identifying Petitioner as the shooter, the testimony linking Petitioner to the drug dispute and the murder weapon, and Petitioner's own admissions placing him at the scene, the Court concludes that any error in admitting Dixon's statement was harmless beyond a reasonable doubt. Habeas relief is not warranted.

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to habeas relief on the claims contained in his petition and denies the petition for writ of habeas corpus.

Before Petitioner may appeal this Court's dispositive decision, a certificate of

26

appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of

appealability may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas

claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that

reasonable jurists would find the district court's assessment of the constitutional claim

debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner

satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322,

327 (2003).  In applying this standard, the court may not conduct a full merits review, but must

limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.

*Id.* at 336-37.

When a district court denies a habeas claim on procedural grounds without addressing

the claim's merits, a certificate of appealability should issue only if the petitioner shows that

jurists of reason would find it debatable whether the petitioner states a valid claim of the denial

of a constitutional right and that jurists of reason would find it debatable whether the district

court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner has failed to make a

substantial showing of the denial of a constitutional right as to his habeas claims.  A certificate

of appealability is therefore not warranted.  The Court further concludes that Petitioner should

not be granted leave to proceed *in forma pauperis* on appeal as any appeal would be frivolous.

*See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and that leave to proceed *in forma pauperis* on appeal is **DENIED**.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  May 11, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 11, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

28